IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CT-3121-D

RONALD MCCLARY,                )
                               )
                Plaintiff,     )
                               )
        v.                     )    **ORDER**
                               )
NURSE CULLEN, and NURSE MARTIN,)
                               )
                Defendants.    )

On May 24, 2018, Ronald McClary ("McClary" or "plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983, alleging sexual harassment and deliberate indifference to serious medical needs in violation of the Eighth Amendment [D.E. 1]. On April 26, 2018, the court adopted a Memorandum and Recommendations ("M&R"), dismissed McClary's sexual harassment claim, and allowed McClary's deliberate indifference claim to proceed against defendants Nurse Cullen ("Cullen") and Nurse Martin ("Martin"; collectively, "defendants") [D.E. 11].[1] North Carolina Prisoner Legal Services, Inc. assisted McClary with conducting discovery. See [D.E. 36, 40, 60, 61, 64]. On January 7 and February 7, 2020, defendants moved for summary judgment [D.E. 49, 68].[2] Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir.

---

[1] Cullen died while the action was pending. See [D.E. 85]. To the extent that Cullen is sued in his individual capacity, the court's reference to "Cullen" includes the representative of Cullen's estate. See Fed. R. Civ. P. 25(a).

[2] Cullen moves to seal the memorandum of law [D.E. 50], statement of undisputed facts [D.E. 51], and exhibits [D.E. 52] submitted in support of his motion for summary judgment. See [D.E. 53]. The court has considered the motion to seal under the governing standard. See, e.g., Doe v. Pub. Citizen, 749 F.3d 246, 272-73 (4th Cir. 2014). The court denies the motion to seal except the medical records at [D.E. 52-3] shall remain under seal.

1975) (per curiam), the court notified McClary about the motions, the consequences of failing to respond, and the response deadlines [D.E. 54, 72]. On January 15, 2020, McClary responded in opposition to Cullen's motion for summary judgment [D.E. 57, 58, 59]. On February 24, 2020, Cullen replied [D.E. 75].[3] On March 25, 2020, McClary responded in opposition to Martin's motion for summary judgment [D.E. 81, 82, 83]. McClary moves for reproduction of documents [D.E. 78]. As explained below, the court grants defendants' motions for summary judgment and denies McClary's motions.

I.

McClary's claims arose while he was incarcerated at Maury Correctional Institution ("Maury"). See Compl. [D.E. 1] 5. McClary alleges that on March 28, April 5, and April 16, 2018, defendants denied him medical treatment even though he was experiencing flu symptoms, a burning sensation while urinating, and blood in his urine. See id. at 5–7.

Cullen was a registered nurse employed by Worldwide Travel Staffing ("Worldwide"), an independent contractor which provides nursing services for inmates within the custody of the North Carolina Department of Public Safety ("NCDPS"). See Cullen Ex. A [D.E. 52-1] ¶ 6. Cullen provided medical care for the inmates at Maury. See id. On February 12, 2018, Cullen was diagnosed with Amyotrophic Lateral Sclerosis ("ALS"). See Cullen Ex. A ¶ 8. On May 20, 2018, Cullen resigned his employment with Worldwide due to his ALS-related symptoms. See Cullen Ex. A ¶ 20. Martin is a registered nurse who has been an employee of NCDPS since August 2015. See Martin Ex. 1 [D.E. 71-1] ¶ 2, 4. Martin is a lead nurse and was Cullen's supervisor. See Cullen Ex. A ¶ 16; Martin Ex. 1 ¶ 13.

---

[3] McClary seeks leave to file a sur-reply [D.E. 66]. The court denies the motion. See Local Civil Rule 7.1(f)–(g).

2

On March 1, 2018, McClary requested a medical consult for urinary incontinence and soiled boxer shorts. See Cullen Ex. A ¶ 9; Cullen Ex. C [D.E. 52-3] 36. When McClary arrived at the treatment room, he also stated he was suffering from athlete's foot. See Cullen Ex. A ¶ 10; Cullen Ex. C at 36. Cullen evaluated McClary and requested that McClary remove his boxer shorts so that Cullen could verify the presence of urine and conduct an examination, but McClary refused. See Cullen Ex. A ¶ 11; Cullen Ex. C at 36. Cullen requested to examine McClary's feet to verify the presence of athlete's foot, but McClary again refused. See Cullen Ex. A ¶ 12; Cullen Ex. C at 36. Due to McClary's refusals, Cullen could not conduct a medical examination and McClary was escorted out of the treatment room. See Cullen Ex. A ¶ 13; Cullen Ex. C at 36; Cullen Ex. D [D.E. 52-4] 1. Subsequently, McClary filed a grievance alleging that Cullen sexually harassed him during the March 1, 2018 medical encounter. See Cullen Ex. A ¶ 14. On May 14, 2018, McClary's grievance against Cullen was dismissed. See Cullen Ex. A ¶ 21; Cullen Ex. E [52-5] 1.

On March 27, 2018, McClary requested an emergency medical consult, stating "I think I have the flu, my head is pounding, I have the chills, my stomach has been upset, and I'm nauseous." Cullen Ex. C at 32. Tasmin M. Oliver, LPN ("Nurse Oliver") evaluated McClary pursuant to the nursing protocol for cold/flu-like symptoms. See id. at 32–34. Nurse Oliver noted McClary had a fever of 101 degrees Fahrenheit and prescribed him a five-day supply of acetaminophen. See id.

On March 28, 2018, McClary requested another emergency medical consult because he "got the flu." Cullen Ex. C at 17. Cullen and Martin were on duty along with other medical staff. See Cullen Ex. A ¶¶ 15–18; Martin Ex. 1 ¶ 5. Cullen deferred to Martin because McClary's grievance against Cullen regarding the March 1, 2018, medical encounter was still pending and Cullen believed providing medical care to McClary would create a conflict of interest. See Cullen Ex. A ¶¶ 15–16; Martin Ex. 1 ¶ 5. Martin agreed with Cullen's verbal assessment that McClary did not appear to be

3

suffering from the flu and should give the protocol medications time to work. See Martin Ex. 1 ¶¶ 7–10. Martin informed McClary that he supported Cullen's assessment and decision. See Martin Ex. 1 ¶ 11. On the same date, Shannon L. Ricks, LPN ("Nurse Ricks") encountered McClary and noted that he refused to take his medications. See Cullen Ex. C at 31. Nurse Ricks requested that Dr. Lindsey deGuehery ("Dr. deGuehery") review McClary's chart. See id. Later that evening, Alexandra N. Pate, RN ("Nurse Pate") evaluated McClary and found that he tested negative for the flu. See id. at 30. Nurse Pate treated McClary according to the protocol for cold/flu-like symptoms and also requested that Dr. deGuehery review McClary's chart. See id.

On March 29, 2018, Jean P. Vick, RN ("Nurse Vick") evaluated McClary for cold or flu symptoms. See id. at 27. Nurse Vick found that McClary's temperature was 98.5 degrees Fahrenheit and he had no headaches, nasal discomfort, sneezing, discharge, nasal congestion, coughing, or swollen glands. See id. at 27–28. Nurse Vick noted McClary still had three days of acetaminophen remaining and recommended he increase his fluid intake. See id. at 29. Nurse Vick also requested that Dr. deGuehery review McClary's chart. See id. On the same date, Dr. deGuehery reviewed McClary's chart and indicated that McClary had an unspecified acute upper respiratory infection. See id. at 26. Dr. deGuehery prescribed Prednisone. See id.

On April 1 and 2, 2018, McClary requested a medical consult for a bladder infection and sought prescriptions for antibiotics, Hytrin, and Lactulose. See id. at 15–16. On April 2, 2018, Cullen reviewed McClary's requests and referred them to Dr. deGuehery to "evaluate and make recommendations." See id. at 24. On April 3, 2018, Dr. deGuehery reviewed McClary's chart, ordered a new prescription for Septra, and renewed prescriptions for aspirin, Carbamazepine, Lactulose, Lisinopril, Naproxen, and Terazosin. See id. at 22–23. On April 5, 2018, Cullen conducted a chart review and noted that Dr. deGuehery had addressed McClary's complaints. See

4

id. at 21.

On April 11, 2018, McClary submitted two medical consult requests for an ingrown toenail, painful urination, and shoulder pain. See id. at 13–14. On April 17, 2018, Dr. deGuehery evaluated McClary and noted he did not have an ingrown toenail. See id. at 18. Dr. deGuehery also prescribed Phenazopyridine HCI, Amitriptyline HCI, Depo-Medrol Injection Suspension, and Lidocaine Injection Solution for McClary's complaints of painful urination and shoulder pain. See id. at 19.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

5

Estelle v. Gamble, 429 U.S. 97, 106 (1976); see, e.g., Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation and alteration omitted).

"[D]eliberate indifference entails something more than mere negligence, . . . [but it] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See id. at 837; De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Makdessi v. Fields, 789 F.3d 126, 133–35 (4th Cir. 2015). "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis omitted). Rather, a plaintiff must prove "actual knowledge of the risk of harm to the inmate." Iko, 535 F.3d at 241 (emphasis omitted). However, "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence." Makdessi, 789 F.3d at 133. "[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it." Id. (quotation omitted). A prisoner's failure to give advance warning of, or protest exposure to, the risk does not conclusively show that a prison official lacked actual knowledge. See id. at 135–36.

Beyond subjective knowledge, the prison official "must also have recognized that his actions

6

were insufficient to mitigate" the objectively serious condition, medical need, or risk of harm. Iko, 535 F.3d at 241 (quotation and emphasis omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986); see Wilson v. Seiter, 501 U.S. 294, 298–99 (1991). As such, deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241.

McClary has failed to create a genuine issue of material fact concerning whether defendants were deliberately indifferent to a serious medical need. To the contrary, the record demonstrates that McClary received medical care in response to his complaints. See Cullen Ex. C at 13–36. As for McClary's claim that defendants denied him medical treatment for the flu, McClary's flu-like symptoms are not a serious medical need. See Hall v. Holsmith, 340 F. App'x 944, 947 & n.3 (4th Cir. 2009) (per curiam) (unpublished); Stephens v. Ferguson, No. 7:18-cv-00376, 2020 WL 674460, at *5 (W.D. Va. Feb. 11, 2020) (unpublished); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. Feb. 7, 2005) (unpublished), aff'd, 142 F. App'x 193 (4th Cir. 2005) (per curiam) (unpublished). Moreover, the record shows that Cullen and Martin were not deliberately indifferent to McClary's requests for medical care. Specifically, defendants assessed McClary's symptoms, determined that he likely was not suffering from the flu, prescribed him with medications according to the protocol for cold/flu-like symptoms, and ultimately determined that he did not have the flu. See id. at 29–31; Martin Ex. 1 ¶¶ 7–11. McClary's disagreement with defendants' assessment amounts to a difference of opinion as to the course of treatment between a prisoner and his medical providers and fails to establish a violation of the Eighth Amendment. See Estelle, 429 U.S. at 105–06; Jackson v. Lightsey, 775 F.3d 170, 178–79 (4th Cir. 2014); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Rivers v.

7

Hodge, No. 1:11cv644 (CMH/TRJ), 2013 WL 989957, at *6 (E.D. Va. Mar. 12, 2013), aff'd, 539 F. App'x 306 (4th Cir. 2013) (per curiam) (unpublished); Banks v. Broadwater, No. DKC 09-0589, 2011 WL 3164367, at *5 (D. Md. July 26, 2011) (unpublished).

As for McClary's claim that Cullen denied him medical treatment for his bladder infection, the record indicates that Cullen referred McClary's requests for a medical consult and prescriptions to Dr. DeGuehery and followed up to ensure that Dr. deGuehery addressed McClary's complaints. See Cullen Ex. C at 21–25. Again, McClary's disagreement with the adequacy of Cullen's referral and follow-up amounts to a difference of opinion as to the course of treatment between a prisoner and his medical providers and fails to demonstrate a violation of the Eighth Amendment. See Estelle, 429 U.S. at 105–06; Jackson, 775 F.3d at 178–79; Wright, 766 F.2d at 849; Williams v. Med. Corrective Servs., No. PWG-17-347, 2018 WL 3546737, at *5 (D. Md. July 24, 2018) (unpublished). And to the extent Cullen's referral delayed McClary's medical treatment until the next day, even viewing the evidence in the light most favorable to McClary, no rational jury could conclude that any delay caused him substantial harm. See Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (per curiam) (unpublished); Sharpe v. S. C. Dep't of Corrs., 621 F. App'x 732, 733–34 (4th Cir. 2015) (per curiam) (unpublished); Webb v. Hamidullah, 281 F. App'x 159, 166–67 & n.13 (4th Cir. 2008) (per curiam) (unpublished) (collecting cases). Accordingly, the court grants defendants' motions for summary judgment.

As for McClary's motion for reproduction of documents, McClary states he has been "[transferred] 8 times in 18 months due to filing lawsuits." [D.E. 78] 1. During his most recent prison transfer, McClary alleges that officers "threw all of his legal work in toilet water" because the "inmates had flooded in protest and the water came in McClary['s] cell." Id. at 2. According to McClary, he has three shipping bags of wet and ripped legal documents related to "many lawsuits

8

in all 3 districts and 5,000 documents were destroyed and need to be replaced." Id. at 3–4.

The record shows that McClary responded in opposition to defendants' motions for summary judgment and attached several supporting documents. See [D.E. 57, 58, 59, 81, 82, 83]. Thus, McClary's motion lacks merit and is denied.

III.

In sum, the court GRANTS defendants' motions for summary judgment [D.E. 49, 68], DENIES Cullen's motion to seal [D.E. 53] except the medical records at [D.E. 52-3] shall remain under seal, and DENIES McClary's motions for leave to file a sur-reply [D.E. 66], and for reproduction of documents [D.E. 78]. The clerk shall close the case.

SO ORDERED. This 1 day of September 2020.

JAMES C. DEVER III
United States District Judge